UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-21896-CIV-ALTONAGA/O'Sullivan

**VERNITTA GETER**, *et al.*,

    Plaintiffs,
vs.

**GALARDI SOUTH
ENTERPRISES, INC.**, *et al.*,

    Defendants.
_____/

### ORDER

**THIS CAUSE** came before the Court upon Defendant, Fly Low, Inc.'s ("Fly Low['s]") Motion to Compel Arbitration ("Motion") [ECF No. 204], filed February 18, 2015. Plaintiffs, Apeatsiwa Shaw-Taylor ("Shaw-Taylor") and Whitney Hairston ("Hairston") (collectively, "Plaintiffs"), filed an Opposition . . . ("Response") [ECF No. 225] on March 9, 2015. Fly Low filed a Reply . . . ("Reply") [ECF No. 238] on March 17, 2015.[1] The Court has carefully reviewed the parties' written submissions and applicable law.

### I. BACKGROUND

Fly Low seeks to compel arbitration of Plaintiffs' Fair Labor Standards Act claims based on arbitration agreements to which Plaintiffs agreed. (*See* Mot. 1–2). Shaw-Taylor's purported agreement ("Shaw-Taylor Agreement") [ECF No. 204-1] is signed by "A. Taylor," is dated May 22, 2014, and notes the performer's stage name as "Fantasy." (*See id.* 4). Hairston's purported

---

[1] Fly Low filed an additional Motion to Compel Arbitration . . . ("Second Motion") [ECF No. 239] on March 18, 2015, seeking to compel arbitration of the claims of two other Plaintiffs, Kenyatta Clay and Breonna Beck. The Second Motion raises substantially the same arguments as the present Motion, in addition to the issue the two other Plaintiffs' opt-in consent forms were filed past the established deadline. (*See generally* Second Mot.).

agreement ("Hairston Agreement") [ECF No. 204-2] is signed by "Whitney Hairston," is dated May 22, 2014, and notes the performer's stage name as "Bambi." (*See id.* 4).

## II.  LEGAL STANDARD

Courts must enforce agreements to arbitrate workplace disputes pursuant to the FAA, 9 U.S.C. § 2. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). "As a result of the well-established federal policy favoring arbitration, the burden is on the party opposing arbitration to prove to the court that arbitration is improper." *Kozma v. Hunter Scott Fin., L.L.C.*, No. 09-80502-CIV, 2010 WL 724498, at *2 (S.D. Fla. Feb. 25, 2010) (citation omitted).

Courts follow a two-step inquiry to determine whether to compel arbitration of a dispute. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–28 (1985). The Court must first determine "whether the parties agreed to arbitrate that dispute," which the Court must do "with a healthy regard for the federal policy favoring arbitration." *Id*. at 626 (citations and internal quotation marks omitted). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Id.* (alteration added). "To make a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability question, an unequivocal denial that the agreement had been made is needed, and some evidence should be produced to substantiate the denial." *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992) (alterations, citations, and internal quotation marks omitted). "A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists. Rather, that party must substantiate the denial of the contract with enough evidence to make the denial colorable." *Id*. at 855 (citations omitted). In the second step of the inquiry, the Court must decide "whether legal constraints external to the parties' agreement foreclose[] the arbitration" of

the dispute, such as Congressional intent to preclude waiver of judicial remedies for certain statutory rights. *Mitsubishi Motors*, 473 U.S. at 628.

"Although the FAA governs the applicability of arbitration agreements, state law governs issues 'concerning the validity, revocability, and enforceability of contracts generally.'" *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). "Therefore, defenses such as fraud, unconscionability, and duress are governed by state law." *Id.* (citing *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007)).

The FAA requires courts to "rigorously enforce agreements to arbitrate." *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1192 (11th Cir. 1995) (citation and internal quotation marks omitted).

> The party opposing a motion to compel arbitration . . . has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration. . . . This burden is not unlike that of a party seeking summary judgment. . . . Therefore, the party opposing arbitration should identify those portions of the pleadings, depositions, answers to interrogatories, and affidavits which support its contention.

*Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004) (ellipses added; alterations and internal citations and quotation marks omitted).

### III. ANALYSIS

Fly Low contends the arbitration agreements apply to the claims Plaintiffs have asserted against it (*see* Mot. 3), the agreements are clearly understandable, and there is no evidence they were "foisted upon the [Plaintiffs] in an interrogation-like manner [] or that they were somehow coerced into signing them." (*Id.* 5 (alterations added)). Plaintiffs respond the Shaw-Taylor Agreement "pertains to a woman with a different name, different Social Security number, and different stage names. The signature on the document is that of another person entirely . . . ."

3

(Resp. 2 (emphasis omitted)). Likewise, Plaintiffs state the Hairston Agreement contains the wrong Social Security number, and Hairston "does not recall signing the agreement." (*Id.*). Even if the agreements are valid, Plaintiffs contend, they should not be enforced because of the date on which they were signed (*see id.* 2–3) and because "Fly Low pushed the 'agreements' coercively, with knowledge of the pending claims against it, while telling dancers they must sign immediately or they would not be allowed to perform." (*Id.* 3 (emphasis omitted)).

### A. Veracity of Signed Agreements

The threshold issue is whether Plaintiffs signed the agreements, and the Court's analysis is limited to whether Plaintiffs offer "an unequivocal denial that the agreement[s] had been made . . . and some evidence . . . to substantiate the denial." *Chastain*, 957 F.2d at 854 (alterations added; citations and internal quotation marks omitted). Plaintiffs' denials of having made the agreements must include "enough evidence to make the denial[s] colorable." *Id.* at 855 (alteration added; citations omitted). Hairston clearly fails to meet her burden, as the Response merely states she is "uncertain if she indeed signed the document" and she "has no memory of signing the document and does not believe the signature is hers." (Resp. 4). This hardly qualifies as "an unequivocal denial" of the type required by *Chastain*. 957 F.2d at 854 (citations and internal quotation marks omitted).

As for Shaw-Taylor, she does include an Affidavit . . . ("Shaw-Taylor Affidavit") [ECF No. 225-1] asserting the signature on the Shaw-Taylor Agreement "does not appear to be my signature" and "[w]hen I sign my name on documents, I sign it 'Shaw-Taylor' not 'Taylor.'" (*Id.* ¶¶ 11–12 (alteration added)). Further, she states the Shaw-Taylor Agreement contains an incorrect stage name and the incorrect last four digits of her Social Security number. (*See id.* ¶¶ 13–14). Nonetheless, the Court does not find this evidence sufficient to make Shaw-Taylor's

denial colorable, as Fly Low includes a document pertaining to "Apeatsiwa Taylor" with the signature "A. Taylor." (*See* [ECF No. 238-4]). The signature on this document is substantially similar to that contained in the Shaw-Taylor Agreement. Further, an Entertainer Information Sheet [ECF No. 238-1] lists "Fantasy" as the stage name of Apeatsiwa Shaw. Given this evidence casting doubt on Shaw-Taylor's representations, Shaw-Taylor has not met her burden to prove the Shaw-Taylor Agreement was not made. *See Kozma*, 2010 WL 724498, at *2.

### B. Enforceability of Agreements

The Court next confronts the question whether the agreements are legally enforceable. *See Mitsubishi Motors*, 473 U.S. at 628. In support of their contention the agreements were obtained coercively from Plaintiffs while a suit was pending, Plaintiffs rely on *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914 (11th Cir. 2014). (*See* Resp. 4–8). When the Eleventh Circuit upheld the district court's decision to not compel arbitration in *Billingsley*, *see* 560 F. App'x at 922–23, it relied in part on the lower court's factual finding the defendant-employer's campaign to require arbitration agreements "was confusing, misleading, coercive, and clearly designed to thwart unfairly the right of its store managers to make an informed choice as to whether to participate in this FLSA collective action." *Id.* at 922. In particular, the district court found meetings between potential opt-in plaintiffs and employer representatives, which took place in "back-room meetings," were "'highly coercive' and 'interrogation-like.'" *Id.* at 919.

The Court here is precluded from making such a factual finding, given Shaw-Taylor's denial she even made the agreement (and Hairston's half-denial of the same). Plaintiffs are attempting to argue it both ways: "We didn't sign the agreements, but if we did, they were certainly signed under circumstances in which we lacked a meaningful choice in the matter." (*See* Resp. 6). Courts routinely disallow similar attempts under the doctrine of judicial estoppel,

CASE NO. 14-21896-CIV-ALTONAGA/O'Sullivan

and the Court finds such decisions analogous. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (noting "judicial estoppel [] generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase" (alteration added; citations and internal quotation marks omitted)).

### IV.  CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion **[ECF No. 204]** is **GRANTED**.  Plaintiffs, Apeatsiwa Shaw-Taylor and Whitney Hairston, must arbitrate their claims.  The Clerk is directed to terminate these Plaintiffs.

2. The Second Motion **[ECF No. 239]** is **TERMED** given the conclusion of this Order. All Plaintiffs in this action are directed to comply with this Order and submit to arbitration if they signed agreements to arbitrate.  Any Plaintiffs who seek to avoid arbitration must request such relief from the Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of March, 2015.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record