**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Civil Action No. 1:14-CV-21896-ALTONAGA/O'Sullivan**

Vernitta Geter, et al., )
)
Plaintiffs, )
)
v. )
)
Galardi South Enterprises, Inc., et al., )
)
Defendants. )
)

**DEFENDANT FLY LOW, INC.'S *DAUBERT* MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESS RONALD S. FRIEDMAN, CPA AND SUPPORTING BRIEF**

COMES NOW FLY LOW, INC., Defendant in the above-styled civil action, and pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), files this Motion to exclude the expert testimony of Ronald S. Friedman, CPA.

## INTRODUCTION

In this civil action, Plaintiffs timely identified Ronald S. Friedman, CPA as their expert witness, and, on December 11, 2014, based upon his review of seven (7) Plaintiffs' Statements of Claim and three (3) Plaintiffs' depositions, made the disclosures required Fed.R.Civ.P. 26(a)(2)(B). (Attachment 1; Friedman Dep. Ex. 1). Mr. Friedman supplemented his report on January 30, 2015, as required by order of this Court, to include his analysis from an additional 10 Plaintiffs' Statements of Claim. (Attachment 2; Friedman Dep. Ex. 2). Friedman was retained by Plaintiffs' counsel as an expert (1) to calculate of how much each Plaintiff is allegedly owed in back wages, and (2) to opine as to Plaintiffs' classification by Defendant Fly Low, Inc. as

independent contractors rather than employees under the Fair Labor Standards Act. (Attachment 3, Deposition of Ronald S. Friedman ("Friedman Dep.") at 28:17-29:12). Mr. Friedman's proffered expert testimony and corresponding report(s) as to the amount of wages allegedly owed to Plaintiffs must be excluded because the simple arithmetic calculations he performs to arrive at his damages analysis are not beyond the understanding of the average lay person and therefore, will not meaningfully assist the trier of fact. Additionally, Mr. Friedman's proffered "expert" testimony concerning Plaintiffs' classification under the Fair Labor Standards Act must be excluded as an expert's testimony on issues of law is inadmissible under Fed. R. Evid. 702.

## ARGUMENT AND CITATION TO AUTHORITY

### 1. *Daubert* Standard.

Federal Rules of Evidence ("FRE") Rule 702 governs expert testimony and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FRE 702; *Whelan v. Royal Caribbean Cruises, Ltd.*, 976 F.Supp.2d 1328, 1330 (S.D. Fla. 2013). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court imbued trial courts with a gatekeeper role of determining that proffered expert testimony is both relevant and reliable in accordance with FRE 702. *See* 509 U.S. 579, 589 (1993).

The Supreme Court has set forth the criteria for the admissibility of expert testimony under FRE 702 by instructing trial judges to "determine at the outset … whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand

or determine a fact in issue," which includes "a preliminary assessment of whether that reasoning or methodology properly can be applied to the facts at issue." *Whelan*, 976 F.Supp.2d at 1330-31, citing *Daubert*, 509 U.S. at 592-93. 113 S.Ct. 2786. This standard is applicable to all expert testimony: "*Daubert*'s general holding – setting forth the trial judge's 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Whelan*, 976 F.Supp.2d at 1331, citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

The United States Court of Appeals for the Eleventh Circuit has established a three-part conjunctive test to determine whether expert testimony should be admitted under *Daubert*:

> (1) the expert is qualified to testify completely regarding the matters he intends to address; (2) the methodology by which the expert reaches conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005). In determining whether the evidence appropriately assists the trier of fact, the Court must consider the expert evidence's potential to mislead and confuse the trier of fact. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (emphasizing the enhanced importance and role FRE 403 plays in excluding overly prejudicial expert evidence). The party offering the expert bears the burden of laying the proper foundation for the admission of expert testimony and must prove the admissibility by a preponderance of the evidence. *Whelan*, F.Supp.2d at 1331; *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). A district court has considerable leeway is deciding a particular case, how to go about determining whether particular expert testimony is reliable, and that discretion is given a large degree of deference. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004).

Even if a witness is qualified as an expert regarding a particular issue, the process used by the witness in forming his expert opinion must be sufficiently reliable under *Daubert* and its progeny. *See Quiet Tech DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003) (stating that "one may be considered an expert but still offer unreliable testimony"). If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *Whelan*, 976 F.Supp.2d at 1331. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *Frazier*, 387 F.3d at 1261. Thus, it remains a basic foundation for admissibility that "[p]roposed [expert] testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." *Id*. (quoting *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786). "An expert's unexplained assurance that [his] opinions rest on accepted principles" is not enough. *Hoff v. Steiner Transocean, Ltd.*, No. 12-22329-CIV, 2014 WL 273075, *2 (S.D. Fla. Jan. 24, 2014, citing *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F.Supp.2d 1126, 1130 (M.D. Fla. 2007).

The final requirement for admissibility of expert testimony is that it "assist the trier of fact." *Frazier*, 387 F.3d at 1244. In other words, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id*. (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). Expert testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend themselves." *Whelan*, 976 F.Supp.2d at 1332 (citing *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys.*, 50 F.3d 908, 917 (11th Cir. 1995)). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers

for the parties can argue in closing arguments." *Cook ex rel Estate of Tessier*, 402 F.3d at 1111 (citing *Rouco*, 765 F.2d at 995) (observing that expert testimony is admissible if it offers something "beyond the understanding and experience of the average citizen")).

**2. Mr. Friedman's Opinions On Amounts Owed Are Not Beyond The Understanding Of The Average Lay Person.**

In accordance with FRE 702 and *Daubert*, expert testimony is properly excluded when it is not needed to clarify facts or issues of common understanding which jurors are able to comprehend for themselves. *Whelan*, 976 F.Supp.2d at 1332. The methods and calculations used by Mr. Friedman to quantify the alleged amounts owed by Defendants to the Plaintiffs is nothing more than basic arithmetic wholly within the province of the jury, and therefore, must be excluded.

For instance, to calculate the total amount allegedly owed to each Plaintiff, Mr. Friedman examined the facts contained within the (unsworn) Statement of Claims filed by 17 Plaintiffs and the facts contained in the deposition transcripts of only three Plaintiffs -- Leanne Amos, Quatrice Smith, and Shalaha Hardeman. (Attachment 3, Friedman Dep. at 33:8-10, 24, 34:2, 7-10). Mr. Friedman testified that he was unaware who prepared the Statements of Claims for the Plaintiffs, and that did not have first-hand knowledge as to the accuracy of the information contained therein. (Attachment 3, Friedman Dep. at 30:3-5, 31:2-7, 14-15). When he encountered factual discrepancies between the Statements of Claims, and facts contained in the Plaintiffs' deposition testimony as to the amount of time each had worked, at the instruction of Plaintiffs' counsel, Mr. Friedman utilized the information contained in the deposition transcripts, which at times included the use of a mid-point in a range of times worked.[1] (Attachment 3, Friedman Dep. at

[1] For example, if a Plaintiff provided a range of hours worked, e.g., 30 to 35 hours worked per week, Mr. Friedman utilized the mid-point of 32.5 hours. (Attachment 3, Friedman Dep. at

31:22-32:6). In comparing the Statements of Claims and deposition transcripts, Mr. Friedman utilized the assistance of an undergraduate intern. (Attachment 3, Friedman Dep. at 40:15-41:6). Mr. Friedman has never met, and did not interview any of the Plaintiffs in preparing his expert report. (Attachment 3, Friedman Dep. 29:19 - 31:1).

Mr. Friedman purports to calculate the amount of back wages owed to each Plaintiff by utilizing three basic steps. First, Mr. Friedman used $7.25, the current federal minimum wage, and multiplied it by every hour that each Plaintiff, respectively, claimed to have worked at King of Diamonds, not to exceed forty (40) hours, and multiplied that product by the number of weeks each Plaintiff claims to have worked. (Attachment 3, Friedman Dep. at 47:16-24). Next, Mr. Friedman calculated the amount of overtime wages allegedly due to each Plaintiff, respectively, by multiplying the number of hours they claim to have worked at King of Diamonds over forty hours in a workweek by $10.88 (one-and-one half times the federal minimum wage), and then multiplied that product by the number of weeks each claim to have worked overtime hours. (Attachment 3, Friedman Dep. at 48:7-13). Finally, Mr. Friedman then added a "house fee" based on the "number of days they worked per week times the amount they paid per day to be able to enter the house" which he derived from Plaintiffs' Statements of Claims and deposition testimony. (Attachment 3, Friedman Dep. at 48:16-49:8). After calculating these three basic amounts, a "tip fee" was added to the total amount of the first three calculations by multiplying the total by ten (10) percent. (Attachment 3, Friedman Dep. at 49:13-16).

Plaintiffs' counsel provided Mr. Friedman with all of the documents he reviewed and used in reaching his conclusions. (Attachment 3, Friedman Dep. at 29:25-30:2). In performing his back wage calculations, Mr. Friedman did not consider or attempt to include any of the

---

39:20-24).

earnings that Plaintiffs did make and retain in the form of service charges (e.g. table-side or VIP room dance fees). (Attachment 3, Friedman Dep. at 51:21-23). Mr. Friedman's overtime calculations may also be deficient as he did not know what "workweek" King of Diamonds utilized (e.g. Sunday to Saturday, Monday to Sunday, etc.), which Mr. Friedman admitted could affect his calculation of Plaintiffs' overtime hours. (Attachment 3, Friedman Dep. at 43:15-45:7). Moreover, Mr. Friedman admitted that the majority of the work done comparing the Plaintiffs' Statements of Claims and Plaintiffs' deposition testimony was conducted by an undergraduate student intern, not Mr. Friedman himself. (Attachment 3, Friedman Dep. 40:13-41:24).

Pursuant to FRE 702, the Court should exclude the testimony of Mr. Friedman as his "opinions" concerning the alleged amounts owed to the Plaintiffs are not beyond the understanding or comprehension of the average lay person. Mr. Friedman admits that the arithmetic (basic multiplication and addition) used to arrive at the final amounts owed did not require the application of any scientific, technical, or other specialized expertise. (Attachment 3, Friedman Dep. at 54:21-55:3). He further admits that the opinions and conclusions he reached in his report as to the entitlement for each Plaintiff did not concern matters "beyond the understanding of the average layperson." (Attachment 3, Friedman Dep. at 55:16-21).

As admitted by Mr. Friedman in his deposition, the calculation of the (alleged) amounts owed was nothing more than basic arithmetic. (Attachment 3, Friedman Dep. at 52:23-53:2). Because Mr. Friedman's proffered expert testimony falls within the province of the jury, and will not assist the jury, his testimony and report should be excluded. *LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F.Supp.2d 1320, 1336 (M.D. Fla. 2012) (finding proposed expert's "simple arithmetic calculation" was "not beyond the understanding of the average lay person and

therefore would not help the trier of fact"); *Grupo Televisa, S.A. v. Telmundo Comm'ns Grp., Inc.*, No. 04-20073-CIV, 2008 WL 125601, at *2 (S.D. Fla. Jan. 7, 2008) (plaintiffs' expert's "common sense" conclusions regarding plaintiffs' damages calculations did not qualify as admissible expert testimony pursuant to FRE 702). Moreover, the basic calculations and totals derived therefrom can easily be argued by Plaintiffs' counsel during closing argument. *Cook ex rel. Estate of Tessier*, 402 F.3d at 1111. Since the conclusions of Mr. Friedman do not require the application of any scientific, technical, or other specialized expertise, as conceded by Mr. Friedman, his calculation of the amounts (allegedly) owed is nothing more than basic arithmetic, which pursuant to FRE 702, requires his testimony to be excluded.

**3. Mr. Friedman's "Expert Opinions" on Entertainer Classification Constitute Impermissible Legal Opinions.**

Mr. Friedman's proffered expert testimony concerning the proper "classification" of Plaintiffs as employees should be excluded as it constitutes a legal opinion, and is therefore, impermissible. Generally, testimony that purports to offer legal opinions is properly excluded. *Dubiel v. Columbia Hosp. (Palm Beaches) Ltd. P'ship*, No. 04-80283-CIV, 2005 WL 5955691, *3 (S.D. Fla. Jan. 11, 2005) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("as a general rule an expert's testimony on issues of law is inadmissible")); *Bagwell v. Florida Broadband, LLC*, No. 04-60655-CIV, 2005 WL 6163778, *1 (S.D. Fla. March 24, 2005) (proposed expert testimony regarding the ultimate conclusion of whether plaintiff was an administrative and/or executive employee who was exempt from FLSA provisions would constitute testimony regarding a question of law); *Viart v. Bull Motors, Inc.*, 149 F.Supp.2d 1346, 1349 (S.D. Fla. 2001) ("The determination of whether a given employee falls within the scope of a FLSA exemption, while based on the underlying facts, is ultimately a legal question."); *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (trial court improperly

permitted expert to tell jury that defendants violated plaintiff's constitutional rights); *see, e.g., Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530 (1986) ("The question of how the respondents spent their working time on board the Artic Star is a question of fact. The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law ….").

Mr. Friedman is a CPA with no specialized training or education in the area of employee classification. (Attachment 3, Friedman Dep. at 21:1-4). Mr. Friedman has never been qualified as an expert by any court in the area of worker/employee classification or in any wage and hour matter brought under the FLSA. (Attachment 3, Friedman Dep. at 25:13-19). He has never testified as an expert on the subject related to employee classification, or wage and hour issues, nor has he published any articles, journals, or scholarly works related to the issue of employee classification. (Attachment 3, Friedman Dep. at 20:16-25, 25:13-19).

Mr. Friedman admits that whether Plaintiffs were properly classified as independent contractors is a legal question to be determined by the Court. (Attachment 3, Friedman Dep. at 56:23-57:3). Mr. Friedman has no knowledge at all regarding the "economic realities test," and is not familiar any case law governing how entertainers such as Plaintiffs are to be classified under the Fair Labor Standards Act. (Attachment 3, Friedman Dep. at 58:8-59:1). More tellingly, when asked, Mr. Friedman did not know the exact amount of the federal minimum wage. (Attachment 3, Friedman Dep. 45:15-21).

Mr. Friedman concluded that Plaintiffs were employees based "mainly on dominion and control type things." (Attachment 3, Friedman Dep. at 60:13-14). Mr. Friedman based his opinion on "the three depositions that [he] had, which [he] was given the impression that applied across the board that everybody is – their hours are set by others, where they dance, how much

they charge, the days, that they need to work a certain minimum of days, certain amount of hours…It appeared to [him] that club management really treats them in that regard more of an employee, versus an independent contractor." (Attachment 3, Friedman Dep. at 60:18-61:6). In reaching his alleged "expert opinion," Mr. Friedman is attempting to offer a legal opinion as to Plaintiffs' classification under the FLSA which constitutes impermissible expert testimony, an opinion he is not qualified to proffer, and which is simply impermissible under FRE 702. *Dubiel*, 2005 WL 5955691, at *3. Accordingly, Mr. Friedman's opinions and conclusions concerning Plaintiffs' classification as "employees" must be excluded under FRE 702.

**CONCLUSION**

For the above and foregoing reasons, Defendant Fly Low, Inc. respectfully requests that this Court exclude Plaintiffs' proffered expert testimony of Ronald S. Friedman, CPA.

Dated: April 20, 2015.

**LOCAL RULE 7.1(a)(3) CERTIFICATION**

I certify that on January 3, 2015, prior to filing this motion, I corresponded with opposing counsel expressing my concerns about the expert disclosures and opinions contained in Mr. Friedman's original report. In response, on January 15, 2015, Defendants' counsel denied there was anything deficient or improper about their expert's disclosures or opinions. On April 19, 2015, I corresponded with opposing counsel to inform them that I would be filing a *Daubert* Motion, but as of the filing of this Motion, have not received any response from Plaintiffs' counsel concerning whether they oppose this Motion.

Dated: April 20, 2015.

**/s/ Dean R. Fuchs**
Dean R. Fuchs

Respectfully submitted,

*/s/ Dean R. Fuchs*
Dean R. Fuchs
Georgia Bar No. 279170
Lead Counsel for Defendant

Schulten Ward & Turner, LLP
260 Peachtree Street, NW
Suite 2700
Atlanta, GA 30303
(404) 688-6800
(404) 688-6840 facsimile
E-mail drf@swtlaw.com

*/s/ Daniel W. Matlow*
Daniel W. Matlow
Florida Bar No. 384666
Local Counsel for Defendant

Daniel W. Matlow, P.A.
4600 Sheridan Street, Suite 300
Hollywood, FL 33021
Telephone: (954) 842-2365
Facsimile: (954) 337-3101
E-mail: dmatlow@danmatlow.com

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served by VIA CM/ECF on this 20th day of April, 2015 on all counsel of record on the Service List below.

**/s/ Dean R. Fuchs**
Dean R. Fuchs

**SERVICE LIST**

Joshua M. Entin, Esq.
Entin & Della Fera, P.A.
110 S.E. 6th Street, Suite 1970
Ft. Lauderdale, Florida 33301
Tel: (954) 761-7201
Fax: (954) 764-2443
josh@entinlaw.com

Michael Akemon Esq.
The Richards Law Group
P.O. Box 360295
Decatur, GA 30034
Tel: 404-289-6816
Fax: 404-795-0727
mutepe.akemon@richardslegal.com

Jameson B. Carroll Esq.
Michael Weiss Esq.
Carroll & Weiss, LLP
1819 Peachtree Road, Suite 104
Atlanta, Georgia 30309
Tel: (404) 228-5337
Fax: (404) 228-5564
jcarroll@carrollweiss.com
mweiss@carrollweiss.com